To those of you who weren't in here before, welcome, and a continuing welcome to everybody who stuck around. We'll call the next case, 23-9605, Pinto v. Garland. Go ahead, Counsel. Thank you, Judge Carson, and may it please the Court. Max Siegel of Paul Weiss for Petitioners. With the Court's permission, I reserve up to three minutes of my time for rebuttal. Okay, you're going to be the master of your time, so watch the clock, and hopefully we'll give you a chance. I will. This case involves prolonged gender-linked abuse that undisputedly rose to the level of persecution. The abuse included beatings, death threats, and an effort to burn down Petitioner's home while she was sleeping inside. Petitioner attempted to escape this relationship, including by relocating across Brazil three times, but was unable to escape her persecutor. There are three straightforward, independent paths to reversal. First, the BIA erred as a matter of law in requiring Ms. Pinto to provide evidence of a reference by her persecutor to her gender in order to establish a nexus between her gender and the persecution she suffered. The government stands by this position in its briefing, arguing that, quote, Mr. Oliveira made no mention of or reference to any of Pinto's proposed protected characteristics. That's at page 17. This is wrong on the law, because petitioners can and frequently must rely on circumstantial evidence, as persecutors can hardly be expected to state expressly the motives for their persecution. Well, as I read the BIA's decision, the BIA seemed to believe not to rely so much on that, but on the fact that the persecution was caused by jealousy. The BIA's decision expressly adopts the immigration judge's statements regarding reference, but with respect to jealousy, that's where the BIA made its second error, in that it found one motive for persecution that it described as jealousy or personal animosity and stopped short by failing to consider another inextricably intertwined motive, namely Ms. Pinto's gender. What if we were hearing the persecution was the same kind of persecution, but it was a same-sex couple? In that event, I think there would still be a finding of nexus on the ground that the victim of the persecution was of the same gender as the persecutor. And I think that in this case, what's particularly telling... I'm sorry, counsel, to interrupt, but if that's true, then... I feel like I should wave goodbye. There we go. That was a real showstopper. We better give you a minute. I'm going to watch your clock here at 11.52. I'm going to give you a minute. Go ahead. I'll wait for this to retract. OK, if I can find that thought. Judge Carson asked you if this scenario would be the same if it were a same-sex couple. And as I heard your answer, I thought it was, well, it's really more about sort of an intimate relationship. It doesn't matter what the gender is. But how can that be true if your argument here is that the persecution happened on account of gender? I don't think it doesn't matter what the gender is by any means. I think that in the event of a same-sex couple, a persecutor attracted to persons of his or her own sex, it would be on account of sex, just of the persecutor's own sex, rather than the opposite sex. But what's distinctive here, going beyond even the genders in the relationship, is the nature of the abuse and the incidents that provoked the abuse or comments made in the course of the abuse.  Go ahead. Thanks. The issue before us is nexus, right? Correct. And that's a factual determination. Correct. So if we are unpersuaded by your matter-of-law arguments, the standard we're bound to is substantial evidence. And it seems that that standard understood as we're bound to uphold the BIA's determination unless any reasonable adjudicator would be compelled to conclude to the contrary. It seems like a very challenging standard for our court, for you. So how do you satisfy that standard? Well, first, to clarify, although we are here on nexus, the failure to consider circumstantial evidence, the failure to consider mixed motives, and the failure to consider inextricably intertwined motives are legal errors that are reviewable de novo and not for substantial evidence. Nonetheless, if this court were to conduct substantial evidence review, the BIA's decision is on its face contrary to undisputed testimony that was found to be credible by the IJ. For example, the BIA, as I laid out, adopts this principle that there must be a reference to a protected characteristic. Even if that were the law, which it is not, there are such references in the record here. For example, notably, in the record at pages 134 and 135, Petitioner expressly testified that the abuse she suffered escalated upon her pregnancy with another man, and that she suffered death threats, stalking both her and her son following that pregnancy. That's an express reference to a gender-linked characteristic. Did the BIA rely on that? The BIA did not. The BIA overlooked that, which is the critical error in its analysis. The BIA not only states an incorrect legal standard, but then misapplies that standard by overlooking evidence in the record. The BIA is not permitted to simply overlook or misconstrue evidence that is in Petitioner's favor. I mean, is that unequivocally a sign of gender, though? Couldn't we look at that and say that the persecution escalated because the persecutor couldn't stand for her to be with someone else, period? Back to the jealousy thing? Well, that's where the issue of the motives being inextricably intertwined comes in. I would point the court, for example, to the Sebastian-Sebastian decision out of the Sixth Circuit that we discussed in our brief. There is a finding that personal animosity and a personal vendetta were among the motives for persecution, but the court nonetheless found that there was a nexus because those motives were inextricably intertwined with Petitioner's gender. Petitioner would not have been in the situation where there was that personal animosity and personal vendetta were it not for her gender. Would you agree that generally we're looking at these things? I mean, there's got to be some limiting factor in them, and this seems to be that any male-female relationship that's abusive in Brazil where the man's persecuting the woman would result in persecution on the base of her gender, under your position. I don't think the court needs to go nearly that far. There are specific features here that will not be present in every case of domestic violence that you just mentioned. Critically, for example, there is prolonged abuse that rose to the level of persecution. There was an attempt to burn Petitioner's house down. There were beatings that continued. There was stalking even after Petitioner moved six hours away on multiple occasions. Those are signs of severe persecution. I'll give you that. But where's the nexus? How do those create a nexus? Those factors go to the severity of the persecution. I took your question to ask what the off-ramp might be to a grant of asylum in any instance of domestic violence in a male-female relationship. To some extent, I was, but I'm looking at it. Every abusive relationship, if it's between a male and a female, there's going to be a nexus in your position. I don't think that follows from our position. This court has been clear that when a motive is merely incidental or tangential to persecution, there is no nexus. So I would give the court examples like the following. If there's a relationship where the persecutor simply wants money from the victim and they are incidentally in a male-female domestic relationship, there would be grounds to say there's no nexus there. If the Petitioner were an alcoholic who came home indiscriminately violent, made no reference to gender, made no reference to gender-linked traits, there would be grounds to say that there is no nexus there. Okay, but there were no, he didn't make any statements about gender-linked traits here, did he? Well, he did expressly make statements regarding her pregnancy with another man, at which point the abuse escalated. On top of that, he made statements that she could not wear short clothes, which is typically linked to female gender. He made comments about his jealousy when other men were around. Each of these is gender-linked and goes beyond the mere existence of the relationship. Can you speak a little bit about your but-for standard argument? So I think the but-for standard is a way of articulating a prima facie case of a nexus. As I noted earlier, there is jurisprudence that qualifies that standard if a motive is merely incidental or tangential. So in the example I gave, if the relationship exists and she's a woman, but the persecutor's motive is solely to obtain her money, that would be a case where there's a showing of but-for causation and it's overcome by a showing that the motive was merely incidental or tangential. You don't have anything of that sort here. Can you have an incidental but-for cause? I think to the extent that a but-for cause is inextricably linked to another trait, it might be that that other trait is a but-for cause but incidental. Here on this record, there's nothing to suggest that. The violence is targeted at a woman in a domestic relationship where there are references to gender, where there are incidents of violence that clearly follow events such as being around other men, which is inherently a sex-linked trigger for the abuse. And you're not relying on any other component for nexus other than gender, right? That she was young and black and resilient. None of those combinations of things which sort of appear throughout, but the BIA wasn't as focused on, right? I'm arguing gender now because the BIA made its decision about gender and stopped. But I do think, particularly to Judge Carson's question about a limiting principle, the fact that here a petitioner was unable to leave her relationship is crucial and will not exist in every case of domestic violence. And some of the courts that have weighed in very specifically on the issue of asylum in domestic violence cases have cited that as a crucial factor. We point in our briefing to Dipena Paniagua out of the First Circuit, to Juan Antonio out of the Sixth, and to Diaz-Reynoso out of the Ninth. And what exactly is the evidence that establishes the inability to leave? Are those country condition reports or is it specific to the petitioner? It varies by petitioner. Here I think it's especially clear from the fact that petitioner moved six hours away multiple times, and in each instance her persecutor managed to track her down, send her pictures of her location, continue to send her threats. And that continuation of abuse after an attempt to leave is another factor that the courts I just mentioned have focused on and I think are instructive in constructing a limiting principle here. Counsel, can I get your input as to what issues are properly preserved for us in your challenge to the BIA decision? For example, for the immigration judge you raised a convention against torture claim, but I don't see that as being brief, so do you agree that's waived? I do. And then whether or not Ms. Pinto had past persecution, which of course the immigration judge found that she did and proved that, but the well-founded fear of future persecution, do you consider that waived? I don't because past persecution gives rise to a presumption of well-founded fear of future persecution. So if that's before us, how do we analyze the relocation findings? Or has that been properly sort of discussed that we could reach a meaningful decision about it, about whether or not she could relocate within Brazil? I don't think it's necessary for the court to make that finding, particularly without the CAF claim, because the government does not dispute that by regulation presumption of future harm for purposes of withholding removal is established when past persecution on account of a protected ground is established, and thus there's no need for further examination. Thank you, counsel. You're out of time. Thank you.  May it please the court? Please. You're going to need to speak up just a little bit. May it please the court? Perfect. May it please the court? Alana Young for the Attorney General. Unless the court has a particular or the many issues you raise, if there's a particular one you want me to address, I'm going to start with the issue of what is before this court, and then I'll go and proceed and address the other questions that this court raised. I will also be providing record citations for the evidence, substantial evidence that supports the agency's nexus determination. Can you speak up just a little bit more? Sorry. Okay. Let me see. Your Honors, the only issue before this court is the nexus determination, and it's the nexus determination regarding the particular social group of young, black, Brazilian women unable to leave the domestic relationship. All other issues are not before this court. The government is asking this court to apply the Chenery Principle, which is to review the agency's decision based on the grounds that the agency reached. And here, the ground that the board reached was the nexus determination. It did not address the PSU determination. It did not address relocation. It did not address CAT. The only issue is the nexus determination regarding that PSG. Your Honors. When it comes to the – I'm sorry. Before you move past that, in regards to the nexus question in the social group that, as you just mentioned, young, black, Brazilian woman, which of those on behalf of the Attorney General do you think is before us? Meaning I read the briefs to have – that the government took issue with young, for example, being part of a particularized analysis and whether or not that could qualify, even though other circuits have found that just using the word young to describe a group is particularized enough. Are you guys contesting that? It's not before this court. We're not addressing it. So only gender. We're not addressing – it's not only gender, Your Honor. We're looking at – we're defending the agency's decision with regard to the PSG, that it's young, black, Brazilian woman unable to leave a domestic relationship. We're defending the agency's determination that Petitioner did not establish a nexus between her past or feared harm that was on account of that particular social group. The IJ's determination with regard to the immunity particularity with regards to the word young, that is not before this court because the board did not reach this determination. The nexus issue – the reason why we're focusing on gender, the word gender, Your Honor, is because the evidence before this court did not show – the evidence over the agency did not show all the aspects, all the characteristics that Petitioners propose. So could you speak to that? Yes. This is what I'm really struggling with. The government has to concede that gender played some role in this case, right? Yes, Your Honor. Okay. So on this record, if her gender made her more vulnerable, and we have that in our record, and there's all sorts of circumstantial evidence here that gender is linked to domestic violence in Brazil. And when we have that record and we're reviewing for substantial evidence, I think it's the government's position that that may be true, but that's not enough. And I would like to know what is enough. Yes, Your Honor. So a few things here. Looking at the totality of this record, the agency – looking at the totality of this record, the agency recognized that based on the country-conditioned evidence, women could be more susceptible to violence. But that was it. There is no testimony from Petitioner indicating that her gender was part of it. Petitioner's argument is based on conjecture, but conjecture is not sufficient to compel reversal. What we have before this court is – and I will get to Your Honor's questions. What we have before this court is evidence, AR-121, where she was asked – she said, he was jealous. He came to me to the market. He was jealous because there were many men around. AR-151, during that period, did he ever say why he was violent to you? No. But it was because something related to jealousy or because he was nervous. Again, why do you think he was violent towards you? For jealousy. Petitioner's best – the best evidence in this case is Petitioner's own testimony. Regarding the relationship, Your Honor, 157, was he sending any threatening message to you? What happened? So what is it that the government contends is absent here exactly? The government is contending that there is no insufficient evidence, direct or circumstantial, that Jorge's actions against Petitioner were motivated by her – a protective characteristic. I understand. Yes, Your Honor. What I don't understand is what does that evidence that you contend is missing? What would it look like? It would look like, one, it would look like if we're looking at the country condition evidence, there could have been country condition evidence of the culture of domestic violence, of machismo, of a motive that men overcame – men were overcoming women because they were their property, that they belonged to them. Any evidence of that? In the record that you just read from the transcript of the hearing before the IJ, why isn't that circumstantial evidence, if not more, of what exactly you just said, that Jorge here viewed Ms. Pinto as essentially based upon her gender? That's sort of one step removed from the jealousy aspect of this, that because of her gender, because of her vulnerability to him, that he was persecuting her and enraged at jealousy because he viewed her essentially as his property which he was entitled to. Why isn't that in the record before us insufficient? Because, Your Honor, that's based on conjecture. There's no – what we have is her testimony of why – what his actions were motivated by. We have that evidence, and to go one step further is insufficient before this court to compel reverso. But your answer to Judge Rossman is, well, we need sort of more evidence about the culture of the country itself. So we needed some evidence to say, well, within Brazil, generally this is how domestic violence works as opposed to how it works in other countries where it's prevailingly men committing acts of domestic violence against women. Wait, Your Honor, to clarify, the country condition evidence that I was pointing out, there would be other evidence too with regards to Petitioner's own testimony. I'm not saying that Petitioner's testimony in this case plus that country condition evidence would be sufficient. The government's position in this case is Petitioner's own testimony in this case shows that Jorge was motivated by jealousy and personal animus. But why? Because of her gender? But, Your Honor, it could be. I mean, it could be, and that's why the agency considered that mixed motive. What else could it be? It was because he was a jealous individual and had personal animus against her because he wanted to resume the relationship and she did not. And that's why we have evidence in the record where he says, where she said, why did, like, she confirmed that she didn't want to be in a relationship with him, AR-128, and that's when he burned down the house. And then it was asked, like, well, she was talking about, why do you think he was sending you threatening messages of burning down the house? Well, it's because I wanted to be finished with him, but he wasn't finished with me. And then we have the statements regarding the son and the son also. It's not, it's because he's not my son and I would kill you both. And that goes to the relationship. It could be. It could be gender. But before the agency, considering the totality of the circumstances, the agency could reasonably conclude that Jorge's motive was based on jealousy and personal animus. And that's the crux of the base of a mixed motive analysis. If this court looks in Rilana and talks about Nexus, there has to be some evidence that the prosecutor knows about and cares about the gender. But there's no evidence to show that he cared about her gender. We have evidence, but we have evidence that he was a jealous individual and he wanted to resume the relationship and she didn't. What about the evidence in the record that he abused her based upon his dissatisfaction with her manner of dress? Isn't that inherently gender-linked? It could be, Your Honor. But here she's saying it's because he was jealous of other men. So the agency could reasonably conclude that… Jealous of other men because why? Their reaction to? I mean isn't that what she was saying? And that's the inference, and that is conjecture. But under totality of the circumstances, why can't we draw that inference? Because before this court, the evidence is the substantial evidence review.  And the court is looking at whether a reasonable adjudicator would be compelled to conclude otherwise. But we're also allowed to consider mixed motives, right? You would review that. You would also be reviewing the agency's mixed motives. We're trying to see whether or not the BIA here in their factual findings, reviewing the IJ record on Nexus, the government's saying, well, it's a totality of the circumstances and what the BIA determined was reasonable. But we're trying to probe to see do we agree that it was reasonable under even a substantial evidence standard? Or is it just so patently obvious that what underlies their findings here of jealousy is based upon gender that they erred by not acknowledging that? Your Honor, the agency did acknowledge that, and that's the thing. When you look at the immigration judge and the board's decision, the agency considered the mixed motive based on her testimony, whether he was jealous and had a personal animus, and then looked at the gender. And the gender aspect, the agency considered the totality, and that came from the country condition evidence. The agency recognized that but determined that the one central reason, at least one central reason, was because he was jealous and had personal animus. And before this court, it's not whether the agency acted reasonably. It's whether a reasonable adjudicator would be compelled to conclude otherwise. So let me ask you a question. So assume for me that the evidence is this, that the persecutor wouldn't have persecuted her if he – or that the persecutor was attracted to her because she was a female, that the persecutor had been in a relationship with her because he prefers females, that the persecutor wanted to continue the relationship but she broke up with him, and that when she broke up with him, it made the persecutor mad. After that, any time the persecutor noticed her with another man or not paying – or around men or doing things that might attract other men, he flew into a rage and would beat her based on jealousy and the fact that she didn't want to be in a relationship with him. So that's your factual background. Can the BIA, under that set of facts, reasonably conclude that one central reason was not her gender? Yes, Your Honor, because it could also go – because based on that fact, it could also be jealousy. It could also be jealousy and if she – under – was she able to leave the relationship, Your Honor? Well, we have to take her word for it, don't we? Your Honor, it would still be based on jealousy and it would be based on the other facts and the other evidence in the record, of course, whether what his testimony was – any indication that he had told her what her testimony was, what the country condition evidence showed. I mean there is evidence out there that could have been presented, but it wasn't presented in this case. What we have here, the best testimony in this case, is Petitioner's own testimony of jealousy and personal animus and he wanted to resume the relationship, but she simply did not. And what I'm getting at is I wanted your position on what do we do when we have this record full of lots of facts that could go either way? It's substantial evidence, Your Honor. Whether a reasonable adjudicator would be compelled to conclude otherwise and even if this court, looking at the record, would have ruled otherwise, this court should apply the differential substantial evidence standard under Ming Dai, under Elias Zacharias, and affirm the agency's decision. Can you distinguish the Sebastian-Sebastian case? Yes, Your Honor. For Sebastian-Sebastian, the Sixth Circuit case, there the BIA stopped short and didn't consider the mixed motive, didn't consider the gender aspects of it. But in this case, we know that the agency did because we can see it physically. Physically by looking at the agency's decision that it considered first, this is first, Your Honor, physically looking at the BIA's decision, the BIA talked about why the one central reason was Jorge's actions was his jealousy and his personal animus, but then we go to the next paragraph that talks about the gender aspect of it and the agency recognizing that gender could have been a reason, but it's not one central reason for Jorge's actions. So is the legal error that was present there your contention it's absent here? Yes, Your Honor. So that's why we're looking at this under the substantial evidence standard. Yes, Your Honor. Counsel, can I ask one more question? I may just be confusing this, but the issues on appeal were focused wholly on nexus, but what about the government's position on whether a petitioner has alleged the social group and whether that's adequate? Because I understood the briefs to be that was also somewhat contested and that the BIA opinion, as I recall, kind of footnotes the five social groups that she alleged, but it rested solely upon nexus. So let's just say that we found that there was, even under the substantial evidence standard, a problem with what the BIA concluded in nexus. What do you suggest we do regarding the social groups and whether we just accept those as a given as part of our analysis, or what do we do with that part of the case? Yes, Your Honor. This court would have to remand for the agencies to consider. Several things is the immigration judge, when it comes to cognizability of a particular social group, there's three determinations, immunity, particularity, and social distinction. The IJ only reached the particularity determination, and then before the board, the board did not address the IJ's particularity determination, and we know that from the board explicitly affirming the nexus determination and the objectively reasonable fear determination, but then may continue. May I briefly continue? Yes, go ahead. But then in a footnote, in footnote six, it says that because these issues were dispositive, it wasn't reaching the other issues. So this court would have to remand to the board to give the board the opportunity to consider the other grounds that the immigration judge considered, and then if the board decides to do so, it would remand to the immigration judge to give the immigration judge the opportunity to address the other aspects of the cognizability of the particular social groups, Your Honor. Okay, thank you, Counselor. You're out of time. Okay, the case will be submitted, and Counselor excused. You didn't have any time left. Did you have ten seconds? She went over it a little bit. We might have one minute from the closing. Oh, that's right. I gave you a minute. My bad. You have a minute and ten, in fact, because it looked like you had ten seconds left. Go ahead. Thank you, Your Honors. I'd like to begin where my friend on the other side left off with Sebastian Sebastian. She attempted to distinguish this case on the ground that the BIA here had a paragraph about lacking a reference to gender and then had a paragraph about country conditions and vulnerability to violence. That is exactly what happened in Sebastian Sebastian, 87F4 at page 848 of the opinion. As to my friend's focus on jealousy, it overlooks the simple fact that when someone is jealous, they are jealous of something. It's not a personality trait in isolation. There's no testimony that Mr. Oliveira was jealous of anyone other than Ms. Pinto. There's no testimony that he became jealous for any reason other than her gender, other than when she was around other men, other than when she was pregnant. Would it be a reversible error for us to say that in this case all the adjudicators and judges that have considered cases like this were fundamentally unreasonable under the applicable standard because of the way that gender inheres in cases like this? I think that it depends on drawing the line with respect to case law. On this evidence? On this evidence. Could we say that on this evidence and stay within the bounds and scope of the review that the standard for nexus requires of us? I think you would say that, first, this reference requirement is contrary to law. Second, there is evidence on these facts of intertwined motives. There is violence after the pregnancy, after being around other men, after wearing short clothes. The harm rises to an extraordinary level of severity, and there's demonstrated inability to leave the relationship and abuse that continues after an attempt to leave the relationship. Okay. Thank you, counsel. You're out of time. Thank you, your honors. All right. The case will be submitted and counsel are excused. And we are set for a 10-minute recess while we get some new students in and the students in red are going out.